Joseph G. Sansone
Assunta Vivolo
Todd D. Brody
David C. Austin
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
100 Pearl Street, Suite 20-100
New York, NY 10004-2616
(212) 336-0080 (Brody)
Email: brodyt@sec.gov

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>**Plaintiff,**<br><br>**-against-**<br><br>**CHETRAM BALLI,**<br><br>**Defendant.** | **COMPLAINT**<br><br>**1:26-cv-7294 ( )**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against Defendant Chetram Balli ("Balli" or "Defendant"), alleges as follows:

## SUMMARY

1. This matter concerns repeated insider trading by Balli in the securities of multiple publicly traded companies ahead of announcements of mergers, acquisitions, and other corporate transactions between May 2025 and October 2026 (the "Relevant Period").

2. Balli is employed as a Document Processing Specialist at the New York office of a large international law firm (the "Law Firm") with a substantial mergers and acquisitions ("M&A") practice.

3. Through this position, Balli had access to material and highly confidential nonpublic information ("MNPI") concerning mergers and acquisitions and other corporate transactions on which the Law Firm was providing legal counsel.

4. Balli took advantage of his position at the Law Firm and the MNPI that he acquired and engaged in a pattern of timely trades in the securities of target companies ahead of the public announcements of transactions involving those companies.

5. For example, on November 5, 2025, the day before the announcement of Charles Schwab Corporation's ("Schwab") acquisition of Forge Global Holdings, Inc. ("Forge"), Balli purchased 1,242 shares of Forge stock. Following the announcement on November 6, 2025, Balli sold those shares on November 11 and 12 for a profit of approximately $22,064.

6. Similarly, on August 28, 2026, approximately five weeks before the October 8, 2026 announcement of Viatris Inc.'s ("Viatris") acquisition of Pacira BioSciences, Inc. ("Pacira"), Balli began to build a position in Pacira stock. After buying a total of 3,930 shares of the stock between August 28 and September 11 and selling those shares by mid-September, Balli purchased 1,700 shares of Pacira stock between September 24 and October 7, 2026. Following the announcement on October 8, 2026, Balli sold those shares for a profit of approximately $17,803.

7. In both of these examples (his two most profitable trades), Balli learned about the upcoming acquisition through his employment at the Law Firm. Balli violated the Law Firm's policies by trading in these securities.

8. Balli also traded in the securities of at least six other companies in advance of transactions in which the Law Firm was involved.

9. While not all of his trading was successful, Balli generated total profits of approximately $55,000 in illegal trading gains.

## VIOLATIONS

10. By virtue of the conduct alleged herein, Balli violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

11. Unless Defendant is restrained and enjoined, he will again engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

12. The Commission brings this action pursuant to the authority conferred upon it by Exchange Act Sections 21(d) and 21A [15 U.S.C. §§ 78u(d), 78u-1].

13. The Commission seeks a final judgment: (a) permanently enjoining Balli from violating the federal securities laws and rules this Complaint alleges he has violated; (b) ordering Balli to disgorge all ill-gotten gains he received, directly or indirectly, as a result of the violations alleged herein, together with prejudgment interest thereon, pursuant to Exchange Act Sections 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(5), 78u(d)(7)]; (c) ordering Balli to pay civil monetary penalties pursuant to Exchange Act Section 21A [15 U.S.C. § 78u-1]; and (d) ordering any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

14. This Court has jurisdiction over this action pursuant to Exchange Act Sections 21(d), 21A and 27 [15 U.S.C. §§ 78u(d), 78u-1, and 78aa] and 28 U.S.C. § 1331.

15. Balli, directly and indirectly, made use of the means or instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange, in connection with the transactions, acts, practices, and courses of business alleged herein.

16. Venue lies in this District under Exchange Act Section 27(a) [15 U.S.C. § 78aa(a)] and 28 U.S.C. § 1391. During the Relevant Period, Balli lived in this District and worked from his home, thus certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within this District, including Balli accessing MNPI and conducting the trading discussed below.

## DEFENDANT

17. **Balli**, age 54, is a U.S. citizen and resides in Hollis, New York. From 1989 through the present, Balli has been employed as a Document Processing Specialist at the New York office of the Law Firm.

## RELATED INDIVIDUALS AND ENTITIES

18. **The Law Firm** is a limited liability partnership headquartered in New York, New York with offices in Washington, D.C. and London, England.

## FACTS

### I. Balli's Employment at the Law Firm and Access to Information

19. The Law Firm describes itself as one of the preeminent law firms for M&A. Many of the Law Firm's M&A lawyers are located in the Law Firm's New York office.

20. Since 1989, Balli has been employed by the Law Firm as a Document Processing Specialist in the Document Processing Department in its New York office. In that capacity, Balli worked with Word, PowerPoint, Visio, Adobe, and other programs to edit, revise, correct, and troubleshoot legal documents and filings, and communicated with lawyers regarding instructions and deadlines. Through his role as a Document Processing Specialist, Balli had access to confidential client information.

21. During the Relevant Period, Balli also worked on preparing documents for public filing. Specifically, he was responsible for putting merger agreements and corporate press releases into the proper format for transmittal to the Commission's Electronic Data Gathering, Analysis, and Retrieval ("EDGAR") system, an electronic filing system that public companies use to file mandatory filings with the Commission.

22. In the course of their work on M&A transactions, lawyers at the Law Firm would submit requests via electronic forms and email to a central application used by Document Processing Specialists for both ordinary and EDGAR-related jobs (the "DPS Application"). Those requests often included the names of the projects, the clients, instructions from the lawyers, and underlying documents like merger term sheets and due diligence reports.

23. After submission to the DPS Application, the requests would be assigned to Document Processing Specialists, including Balli, who would digitally log their work on the assignments.

24. The requests were viewable by Document Processing Specialists, including Balli, through the DPS Application. Balli, and the other Document Processing Specialists, could view requests even when they were not assigned to work on the job, and those jobs typically remained accessible through the end of the calendar year even after being completed.

**II. The Law Firm's Insider Trading Policy and Restricted Trading List**

25. The Law Firm maintains a Policy Prohibiting the Disclosure and Use of Inside Information (the "Policy"). While the Policy has been revised on several occasions, it remained consistent in all relevant respects during the Relevant Period.

26. By its terms, the Policy applies to "<u>All personnel, including partners, retired partners, other lawyers, administrative staff, temporary employees and non-employee consultants retained by the Firm</u> …" (emphasis as in original)

27. Over the years, Balli repeatedly signed documents acknowledging that he had read and understood the Policy.

28. According to the Policy, "[T]he Firm has a strict policy prohibiting anyone connected with it from: Buying or selling (or arranging for or advising or encouraging others to buy or sell) the securities of any company or other entity while possessing nonpublic information (sometimes called 'inside' information) concerning that company or other entity."

29. The Law Firm also maintains a Restricted Trading List – a list of companies and other entities in whose securities the Law Firm's personnel may not trade.

30. According to the Policy, "The companies and other entities listed on the Restricted Trading List include those that are involved in (or may become involved in) current transactions and regular clients in situations where the Firm is made aware of material 'inside' information." The Restricted Trading List is maintained by the Law Firm's Conflicts Department. Entities on the Restricted Trading List are by default subject to a prohibition on trading.

31. Before engaging in any purchase or sale of securities of any company or other entity (with some limited exceptions not applicable here), all employees subject to the Policy are

required to send a request to the Conflicts Department to inquire whether the company or other entity whose securities are involved is on the Restricted Trading List.

32. Under the Policy, all employees subject to the Policy must refrain from trading if they are told that transactions in the securities of the particular company or entity are prohibited.

33. The Policy further notes that if employees subject to the Policy have inside information about a company or other entity, they cannot purchase or sell securities of such a company even if the company or other entity is not on the Restricted Trading List.

34. All the securities traded by Balli referenced in this Complaint were included on the Law Firm's Restricted Trading List at the time that Balli traded in them. Balli did not submit requests to trade any of the securities at issue despite the requirement that he do so.

**III. Balli's Insider Trading**

35. Balli traded while aware of and on the basis of MNPI acquired through his employment with the Law Firm on at least eight occasions and profited on at least four of those transactions.

**A. WiseTech Acquires e2open**

36. Beginning in June 2024, lawyers at the Law Firm's New York office served as counsel to WiseTech Global Limited ("WiseTech") in connection with its potential acquisition of e2open Parent Holdings, Inc. ("e2open").

37. As early as April 4, 2025, lawyers at the Law Firm submitted to the DPS Application requests for document processing services related to the potential WiseTech-e2open transaction. Balli was assigned to work on some of these requests. On April 16, 2025, Balli logged a job updating the table of contents on a due diligence memo that specifically referenced

the upcoming acquisition of e2open. Balli logged additional work on documents referencing the merger on April 21, 2025, and then again on May 12, 2025.

38. While aware of and based on MNPI concerning the impending merger, Balli purchased 14,704 shares of e2open stock on April 24 and 25, 2025 for an average price of $2.29 per share.

39. On May 1, 2025, the Australian Financial Review reported that WiseTech was in discussions to acquire e2open. That same day, the market price of e2open stock increased by $0.43, or approximately 21.83%, to close at $2.40 per share.

40. On May 12, 2025, following the Australian Financial Review press report, Balli sold the e2open shares he had purchased on April 24 and 25, 2025 for an average price of $2.76 per share, locking in a profit of approximately $1,657.

41. Later on May 12, 2025, Balli purchased an additional 14,866 shares of e2open stock for an average price of $2.73 per share.

42. On Sunday, May 25, 2025, e2open announced it had entered into a definitive agreement to be acquired by WiseTech.

43. On Tuesday, May 27, 2025, the next trading day,[1] the market price of e2open stock increased by $0.63, or approximately 24.51%, to close at $3.20 per share.

44. That day, Balli sold the e2open shares he had purchased on May 12, 2025 for an average price of $3.27 per share and an additional profit of approximately $8,025.

**B. Schwab Acquires Forge**

45. Lawyers at the Law Firm's New York office served as counsel to Deutsche Börse AG ("DB"), a major shareholder and strategic backer of Forge Global Holdings, Inc. ("Forge"),

---

[1] May 26, 2025 was Memorial Day, a market holiday.

in connection with the acquisition of Forge by Charles Schwab Corporation ("Schwab"). Law Firm attorneys became involved as early as October 26, 2025, with additional Law Firm attorneys learning of the upcoming acquisition on November 4, 2025.

46. On or around November 4, 2025, Balli accessed an email attaching documents including a Schedule 13D relating to the acquisition of Forge securities. The email specifically referenced the upcoming acquisition of Forge.

47. While aware of and based on MNPI, on November 5, 2025, just hours before Forge's announcement of its acquisition, Balli purchased Forge stock. Starting at 2:19 p.m., he bought a total of 1,242 shares for an average price of $26.30 per share.

48. On November 5, 2025, at 8:04 p.m., Forge issued a press release announcing that it had been acquired. Similarly, on November 6, 2025, at 6:30 a.m., Schwab announced its acquisition of Forge. On November 6, 2025, the market price of Forge stock increased by $17.95, or approximately 68.72%, to close at $44.07 per share.

49. Following the announcement of the acquisition, on November 11 and 12, 2025, Balli sold the Forge shares he had purchased on November 5, 2025 for an average price of $44.21 per share and a profit of approximately $22,064.

**C. UHS Acquires Talkspace**

50. Beginning in July 2025, lawyers at the Law Firm's New York office served as counsel to Talkspace, Inc. ("Talkspace") in connection with its acquisition by Universal Health Services, Inc. ("Universal").

51. As early as October 23, 2025, lawyers at the Law Firm began submitting document processing requests concerning the Talkspace transaction to the DPS Application. The DPS Application received numerous requests for processing of deal-related documents between

October 2025 and the announcement of the acquisition in March 2026. Those requests included a request to process a copy of the "Merger Agreement" on February 28, 2026.

52. On November 11, 2025, while aware of and on the basis of MNPI, Balli began purchasing Talkspace stock. After trading in and out of the stock repeatedly during the lengthy negotiations, Balli purchased 11,621 shares of Talkspace stock on March 3, 2026 for an average price of $4.63 per share.

53. On March 9, 2026, at 7:39 a.m., UHS issued a press release announcing the merger. That same day the market price of Talkspace stock increased by $0.36, or approximately 7.56%, to close at $5.12 per share.

54. Following the announcement of the acquisition, on March 9, 2026, Balli sold the Talkspace shares he had purchased on March 3, 2026 for an average price of $5.14 per share and a profit of approximately $5,970.

**D. Viatris Acquires Pacira**

55. Beginning in April 2026, lawyers from the Law Firm's New York office served as counsel to Viatris in connection with its acquisition of Pacira.

56. Lawyers at the Law Firm submitted to the DPS Application document processing requests relating to the Pacira transaction as early as August 5, 2026, with numerous additional requests between August and October 2026. Those requests included a copy of a "due diligence review tracker" on September 16 and a Form 8-K announcing the entry of a definitive agreement on October 6.

57. Balli accessed a copy of the proposed merger agreement on August 20, 2026.

58. While aware of and based on MNPI, Balli traded ahead of the announcement, buying and selling Pacira stock between August 28 and September 21, 2026. Balli sold out of

his position by September 21, but then purchased additional shares on September 24 and October 7, establishing a position of 1,700 Pacira shares at an average price of $25.83 per share.

59. On October 8, 2026, at 7:45 a.m., Viatris announced the acquisition. That same day the market price of Pacira stock increased by $11.19, or approximately 44.4%, to close at $36.39 per share.

60. Following the announcement of the acquisition on October 8, 2026, Balli sold his shares that same day for an average price of $36.30 per share and a profit of approximately $17,803.

**E. Other Trading by Balli**

61. Balli also traded in the securities of at least four other issuers that were involved in transactions where the Law Firm was representing one of the parties to that transaction, but did not profit in these instances due to unfavorable market movement or timing. Balli traded in each of these securities while aware of and based on MNPI that he obtained though his position at the Law Firm.

62. Beginning on or around July 15, 2025, lawyers at the Law Firm's New York office represented Kenvue Inc. ("Kenvue") in connection with its acquisition by the Kimberly-Clark Corporation ("Kimberly-Clark"). On November 3, 2025, Kimberly-Clark announced its acquisition of Kenvue. Balli traded ahead of the announcement, purchasing 2,004 shares of Kenvue stock from September 16 to September 18, 2025.

63. Balli also traded in both Paramount Skydance Corporation ("Paramount") and Warner Bros. Discovery, Inc. ("Warner Bros."), in connection with Paramount's acquisition of Warner Bros. Beginning in September 2025, lawyers at the Law Firm's New York office represented Paramount in the transaction. Balli purchased 2,151 shares of Warner Bros. stock on

December 2, 2025, several days before Paramount's December 8, 2025 announcement of its hostile tender offer for Warner Bros. On February 26 and 27, 2026, Balli also purchased 4,371 shares of Paramount for an average price of $13.46 per share shortly before Paramount's announcement on February 27, 2026 of its planned merger with Warner Bros.

64. Similarly, on June 16, 2026, the Olin Corporation ("Olin"), announced a merger with the Huntsman Corporation ("Huntsman"). Lawyers at the Law Firm's New York office represented Olin in the merger. Balli traded ahead of the merger announcement, purchasing 2,592 shares of Huntsman stock on May 11, 2026.

65. While Balli did not profit on these four series of trades, they are consistent with his prior pattern of trading on MNPI ahead of transactions involving his employer.

**IV. Balli's Brokerage Accounts**

66. Until August 2026, Balli conducted his trading through an account that he held at a U.S. based broker dealer ("Brokerage A"). That account was opened in August 2000 and Balli listed the Law Firm as his employer on account paperwork.

67. Most of Balli's trading detailed in this Complaint took place in his account at Brokerage A.

68. In August 2026, Brokerage A closed Balli's account.

69. Balli then opened a new account with another U.S.-based broker dealer ("Brokerage B") and falsely listed himself as "Unemployed" in his Brokerage B application.

70. Balli continued his pattern of insider trading in his account at Brokerage B, profitably trading in the securities of Pacira.

## FIRST CLAIM FOR RELIEF

### Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder

71. The Commission re-alleges and incorporates by reference the allegations in paragraphs 1 through 70.

72. As an employee of the Law Firm representing clients who were corporate targets of an acquisition, Balli had a fiduciary duty to the Law Firm and the targeted companies' shareholders. Balli also had a duty of loyalty and confidentiality to maintain the Law Firm's exclusive use of information about upcoming acquisitions for the benefit of the Law Firm and the Law Firm's clients who were acquiring other companies or were otherwise involved in the transactions.

73. Balli knew or recklessly disregarded that the information he obtained concerning acquisitions and other corporate transactions on which the Law Firm was providing legal counsel was material and nonpublic and that he was breaching a duty by trading on the basis of such information for his own benefit.

74. Balli, directly or indirectly, singly or in concert, in connection with the purchase or sale of securities and by the use of the means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly (i) employed one or more devices, schemes, or artifices to defraud; (ii) made one or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (iii) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

75. By reason of the foregoing, Balli, directly or indirectly, has violated and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

### I.

Permanently restraining and enjoining Balli and his agents, servants, employees, and attorneys, and all persons in active concert or participation with any of them, from violating, directly or indirectly, Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

### II.

Ordering Balli to disgorge all ill-gotten gains he received, directly or indirectly, with prejudgment interest thereon, as a result of the violations alleged herein, pursuant to Exchange Act Sections 21(d)(5) and 21(d)(7) [15 U.S.C. §§ 78u(d)(5), 78u(d)(7)];

### III.

Ordering Balli to pay civil monetary penalties pursuant to Exchange Act Section 21A [15 U.S.C. § 78u-1];

### IV.

Granting any other and further relief this Court may deem just and proper.

**JURY DEMAND**

The Commission demands a trial by jury.

Dated: New York, New York
November 12, 2026

/s/ Todd D. Brody
Todd D. Brody
Joseph G. Sansone
Assunta Vivolo
David C. Austin
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
100 Pearl Street, Suite 20-100
New York, NY 10004-2616
(212) 336-0080 (Brody)
Email: brodyt@sec.gov